## SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
15TH FLOOR
560 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6828
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 5100 | SUITE 950 | SUITE 3800 |
|---|---|---|---|
| 1000 LOUISIANA STREET | 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCarmody@susmangodfrey.com

October 10, 2013

VIA ECF and FAX

Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
      11-MD-2262 (NRB)

Dear Judge Buchwald:

We write on behalf of the OTC plaintiffs in response to defendants' September 27, 2013 letter ("Letter") seeking leave to dismiss the OTC plaintiffs' unjust enrichment and contract claims, and their October 4, 2013 letter responding to plaintiffs' request to file a motion for partial judgment under Fed. R. Civ. P. 54(b).

Defendants have taken no position on plaintiffs' request for a partial judgment on plaintiffs' Sherman Act claim, and for the reasons stated in our September 18, 2013 letter (Dkt. # 414), we respectfully submit that the factors supporting a partial judgment are satisfied here, and that an immediate appeal from the dismissal of the Sherman Act claim are warranted. Two appeals on that claim—by the Bondholder plaintiffs and by the Schwab plaintiffs—have already been filed, and it would maximize judicial efficiency for the OTC plaintiffs' appeal to be on the same schedule as those. We respectfully request that the September 18, 2013 letter be treated as a motion and that the motion be granted for the reasons set forth therein. A proposed order is attached to this letter.

On the merits of defendants' proposed motion to dismiss, beyond the novel argument that plaintiffs lack standing to sue some defendants, defendants' arguments

October 10, 2013
Page 2

largely rehash arguments previously made in opposition to plaintiffs' motion for leave to amend, which this Court rejected in its August 23, 2013 Order, *In re LIBOR-Based Instr. Antitrust Lit.*, 2013 WL 4504769 (S.D.N.Y. 2013) ("Order").

First, defendants argue that the Court should dismiss the OTC Plaintiffs' unjust enrichment and breach of contract claims "to the extent they are asserted on a collective or conspiracy basis." But as this Court recognized, each defendant can be held individually liable for breach of contract and unjust enrichment for its participation in the collective and concerted action to manipulate and fix LIBOR. *See, e.g.*, Order at 56, 2013 WL 4504769 *21 ("By allegedly manipulating LIBOR downward, such that it was lower than it would have been if set according to its definition, defendants depressed the consideration plaintiffs received pursuant to their contracts."); Order at 49; 2013 WL 4504769 *19 (unjust enrichment claim stated because, among other reasons, "defendants allegedly manipulated LIBOR such that it was fixed at a lower level than it would have been at normally, and thereby paid plaintiffs less than they were entitled to receive"). For this reason, the allegations of collective misconduct in manipulating and fixing LIBOR are highly relevant to the state law claims.

Second, defendants argue that the OTC plaintiffs lack standing to proceed against banks with which the particular named plaintiffs do not have a direct contractual relationship, relying principally on *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-66 (2d Cir. 2012).[1] But *Mahon* (like defendants' other cases) is distinguishable because it did not involve allegations that named plaintiffs were injured by the concerted action of all defendants. It only held that named class plaintiffs lack standing to sue defendants whose conduct in no way injured them. Here, by contrast, plaintiffs were injured by the concerted conduct of all defendants. *Mahon* even recognized that courts have discussed two relevant exceptions to standing in the class action context, one of which "covers cases in which the named plaintiff's injuries are the result of a conspiracy or concerted schemes between the defendants." *Id.* at 63 (quotations omitted). While it criticized a second exception, which "covers cases in which it would be expeditious to combine the defendants into one action because they are 'juridically related,'" it did not address the first exception. A more recent Second Circuit decision makes clear that named plaintiffs have standing provided, as here, that they were personally injured by all defendants' conduct and that conduct implicates "the same set of concerns" as the conduct alleged to harm other class members by those defendants. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012); *see also*

---

[1] Of course, this argument would not dispose of the entire state law claims, or apply at all to the Sherman Act claims, and even if accepted, plaintiffs would have standing to assert claims against UBS, Deutsche Bank, Barclays, Citibank, Credit Suisse and their associated affiliates.

October 10, 2013
Page 3

*Bromley v. Michigan Educ. Ass'n-NEA,* 178 F.R.D. 148, 163 (E.D. Mich. 1998) (holding that nonunion member plaintiffs had standing to sue unions, challenging fees for collective bargaining done on their behalf, even though not all the defendant unions injured the named plaintiffs, because "[w]hile there was no 'conspiracy' to violate plaintiffs' constitutional rights, there was a concerted scheme to act which allegedly resulted in the violation of plaintiffs' rights at all three levels of union affiliation" and "the union affiliation presents an organizational structure which suggests the expediency of proceeding against, and resolving the issues as they relate identically to, all named defendants").

There is a further, independent reason that Plaintiffs have standing to assert an unjust enrichment claim against all defendants. Defendants do not respond to the argument, which plaintiffs previously advanced in their reply brief in support of leave to amend, that courts have sustained unjust enrichment claims against a defendant who did not directly deal with a plaintiff but who engaged in a common scheme with a party that did.[2] That is this case here.

Third, defendants repeat without elaboration their prior argument that plaintiffs' state law claims are not pleaded with sufficient detail under Rule 8(a)'s notice-pleading standard. However, defendants fail to mention that this Court, after an extended discussion, arrived at a contrary conclusion, which defendants give no reason to reconsider. *See* Order at 49, 2013 WL 4504769 *19 ("plaintiffs plausibly allege that it would be inequitable to permit defendants to retain the rewards they reaped at plaintiffs' expense"); Order at 55, 2013 WL 4504769 *21 ("plaintiffs have plausibly alleged that defendants breached the implied covenant of good faith and fair dealing."). Defendants also argue that the state law claims fail to satisfy Rule 9(b). Not only is Rule 9(b) inapplicable because the claims are not predicated on fraud, *see, e.g., In re Pharm. Indus. Average Wholesale Price Litig.,* No. 04-6054, 2007 WL 1051642, at *10 (D. Mass. Apr. 2, 2007), but also this Court has now twice observed that the pleadings satisfy Rule 9(b). Order at 53 n. 30, 2013 WL 4504769 *21 n. 30 (rejecting defendants' argument that "plaintiffs have failed to satisfy Rule 9(b)'s requirement . . . for substantially the same reasons given in the March 29 Order" and noting that plaintiffs alleged that the manipulation "directly affected

---

[2] *See, e.g., Eastman Kodak Co. v. Camarata,* No. 05-CV-6384L, 2006 WL 3538944, at *15 (W.D.N.Y. Dec. 6, 2006) (parties' relationship not too "attenuated" for unjust enrichment claim where plaintiffs had no direct dealing with defendant but "plaintiffs allege that [defendant] knowingly furthered the scheme to defraud by means of money laundering, and that in so doing [defendant] was enriched through her receipt of substantial sums of money"); *cf. In re Amaranth Natural Gas Comm. Lit.,* 587 F. Supp. 2d 513, 547 n.229 (S.D.N.Y. 2008) (leaving open the question of whether a class consisting of those who made direct purchases with Amaranth Advisors would have a sufficient relationship to sustain an unjust enrichment claim against all other defendants who helped Amaranth Advisors manipulate the market).

October 10, 2013
Page 4


defendants' payments" on plaintiffs' contracts). Defendants do not, and cannot, explain why those previous decisions were in error.

Fourth, defendants argue, for a second time, that the breach of the implied covenant of good faith and fair dealing claim is deficient because it fails to plausibly allege that defendants' conduct was in reckless disregard of plaintiffs' rights. However, defendants give no good reason to reconsider this Court's recent holding that "plaintiffs here have plausibly alleged that defendants' alleged manipulation of LIBOR was at least in reckless disregard of the detriment to plaintiffs, with whom defendants were in direct contractual privity." Order at 61, 2013 WL 4504769 *22. The Court's observation is indisputably correct: the complaint expressly alleges that defendants "understood that the collusion to suppress LIBOR had serious consequences for the prices of derivatives and LIBOR-based products being offered to their customers," and notes that Barclays openly expressed its "concerns about the trillions of dollars of derivatives fixed off LIBOR." SCAC ¶ 333. While defendants appear to argue that the claim is deficient because there is no allegation that those who manipulated LIBOR for an individual bank knew about that banks' specific contracts with plaintiffs, defendants cite no case requiring that type of knowledge and, in any event, they ignore that defendants were specifically aware of plaintiffs' contracts because they were in direct contractual privity with plaintiffs. Nor is there any merit to defendants' argument that the claim should be dismissed because plaintiffs failed to plead "an intent to injure the other party" or an "intent . . . to obtain an advantage under the relevant contract." Letter at 3. Not only was defendants' knowing conduct intentional, but also it is black-letter law that intent is not required: defendants' reckless disregard of plaintiffs' rights is enough.[3] Order at 60-61, 2013 WL 4504769 *22.

---

[3] Defendants claim that *Paul v. Bank of America Corp.*, 2011 WL 684083 (E.D.N.Y. 2011) "explained that breach of the implied covenant of good faith and fair dealing 'requires a degree of malice or sinister motive.'" Letter at n.4. That is the opposite of what *Paul* said: *Paul* explained that "[b]ad faith, **in contrast to the covenant of good faith implicit in all contracts**, 'requires a degree of malice or sinister motive.'" *Id.* at *6. For this proposition, *Paul* cited *India.com. Inc. v. Dalal*, 324 F. App'x 59, 61 (2d Cir. 2009), which rejected the contention that "bad faith is a necessary element" for a breach of the covenant of good faith and fair dealing claim, and held that "although not motivated by bad faith or animus to [plaintiff], [defendant] nonetheless did breach its duty of good faith and fair dealing." *Id.* at 61-62. Under *India.com*, neither bad faith nor sinister motive is required, but even if they were, the pleadings indisputably allege that defendants acted with bad faith and sinister motive when they knowingly manipulated LIBOR to their advantage and to the detriment of those they contracted with.

October 10, 2013
Page 5

      Thank you for your continued consideration of these matters.

Respectfully,

William Christopher Carmody