# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB<br><br>ECF Case |
| CITY OF RIVERSIDE v. BANK OF AM. CORP. ET AL | No. 13-cv-0597 |
| CNTY. OF SAN MATEO v. BANK OF AM. CORP. ET AL. | No. 13-cv-0625 |
| E. BAY MUN. UTIL. DIST. v. BANK OF AMERICAN CORP. ET AL. | No. 13-cv-0626 |
| CITY OF RICHMOND v. BANK OF AM. CORP. ET AL. | No. 13-cv-0627 |
| CNTY. OF SAN DIEGO v. BANK OF AM. CORP. ET AL. | No. 13-cv-0667 |
| REGENTS OF THE UNIV. OF CAL. v. BANK OF AM. CORP. ET AL. | No. 13-cv-5186 |
| CNTY. OF SONOMA v. BANK OF AM. CORP. ET AL. | No. 13-cv-5187 |
| SAN DIEGO ASS'N OF GOV'TS v. BANK OF AM. CORP. ET AL. | No. 13-cv-5221 |
| CNTY. OF SACRAMENTO v. BANK OF AM. CORP. ET AL. | No. 13-cv-5569 |
| CNTY. OF MENDOCINO v. BANK OF AM. CORP. ET AL. | No. 13-cv-8644 |
| AMABILE ET AL. v. BANK OF AM. CORP. ET AL. | No. 13-cv-1700 |
| MARAGOS v. BANK OF AM. CORP. ET AL. | No. 13-cv-2297 |
| FEDERAL HOME LOAN MORTG. CORP. v. BANK OF AM. CORP. ET AL. | No. 13-cv-3952 |
| SALIX CAPITAL US INC. v. BANC OF AM. SECURITIES LLC ET AL. | No. 13-cv-4018 |
| CEMA JOINT VENTURE v. CHARTER ONE BANK, N.A. ET AL. | No. 13-cv-5511 |
| CITY OF HOUSTON v. BANK OF AM. CORP. ET AL. | No. 13-cv-5616 |
| PRINCIPAL FUNDS, INC. ET AL. v. BANK OF AM. CORP. ET AL. | No. 13-cv-6013 |
| PRINCIPAL FIN. GRP., INC. ET AL. v. BANK OF AM. CORP. ET AL. | No. 13-cv-6014 |

| | |
|---|---|
| CITY OF PHILADELPHIA v. BANK OF AM. CORP. ET AL. | No. 13-cv-6020 |
| THE CHARLES SCHWAB CORP. ET AL. v. BANK OF AM. ET AL. | No. 13-cv-7005 |
| NAT'L CREDIT UNION ADMIN. BD. v. CREDIT SUISSE GRP. AG ET AL. | No. 13-cv-7394 |
| FED. NAT'L MORTGAGE ASS'N v. BARCLAYS BANK PLC ET AL. | No. 13-cv-7720 |
| DARBY FIN. PRODUCTS ET AL. v. BARCLAYS BANK PLC ET AL | No. 13-cv-8799 |
| TRIAXX PRIME CDO 2006-1 LTD. ET AL. v. BANK OF AM. CORP. ET AL. | No. 14-cv-0146 |
| FEDERAL DEPOSIT INSURANCE CORPORATION v. BANK OF AMERICA CORP. ET AL. | No. 14-cv-1757 |
| BAY AREA TOLL AUTHORITY v. BANK OF AMERICA CORP. ET AL. | No. 14-cv-3094 |
| PRUDENTIAL INV. PORTFOLIOS 2 v. BARCLAYS BANK PLC ET AL. | No. 14-cv-4189 |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE DIRECT
ACTIONS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    The Defendants ............................................................................................. 2

        1.    The Foreign Banks ............................................................................. 2

        2.    Certain Foreign Banks' Domestic Subsidiaries ......................................... 3

        3.    The Domestic Banks ........................................................................... 4

        4.    British Bankers' Association ................................................................. 4

    B.    Jurisdictional Allegations in the Direct Action Complaints ................................. 4

ARGUMENT ...................................................................................................................... 5

I.    THE DEFENDANTS ARE NOT SUBJECT TO PERSONAL
    JURISDICTION IN THE CHALLENGED JURISDICTIONS ........................................... 6

    A.    Plaintiffs Cannot Demonstrate General Jurisdiction Because None
        of the Defendants Is "At Home" in the Challenged Jurisdictions. ........................ 7

    B.    Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of
        Specific Jurisdiction. ........................................................................... 9

        1.    USD LIBOR Is Determined in London. ................................................ 10

        2.    Plaintiffs' Specific Jurisdiction Allegations Are Insufficient
            to Demonstrate Personal Jurisdiction. ................................................ 11

            a.    Foreseeable Harm Is Insufficient to Establish Specific
                Jurisdiction. ....................................................................... 11

            b.    Plaintiffs' Contracts Do Not Permit Jurisdiction Over Any
                of the Contracting Defendants. ........................................... 12

            c.    Plaintiffs Do Not Sufficiently Allege a Conspiracy as a
                Basis to Confer Jurisdiction over Defendants. ......................... 15

            d.    The BBA's Communications about USD LIBOR Do Not
                Establish Specific Jurisdiction Over the BBA or the Bank
                Defendants. ....................................................................... 16

e.     Plaintiffs' Allegations Lack the Necessary Causal Nexus to Support Personal Jurisdiction. ...................................................... 18

C.     Considerations of Fair Play, Substantial Justice, and International Comity Support Dismissal. ................................................................ 19

II.    NONE OF THE FEDERAL STATUTES PROVIDES PERSONAL JURISDICTION IN THE CHALLENGED JURISDICTIONS........................................ 20

A.     Personal Jurisdiction Is Examined on a Claim-by-Claim Basis. ......................... 20

B.     Federal Statutes Are Constrained by Due Process.................................................. 22

C.     The Foreign Banks and the BBA Do Not Have Sufficient Contacts with the United States. ............................................................................................ 24

III.   JURISDICTIONAL DISCOVERY IS INAPPROPRIATE. ............................................... 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.W.L.I. Group, Inc.* v. *Amber Freight Shipping Lines,*
828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...........................................................17, 17n

*Advanced Tactical Ordnance Systems, LLC* v. *Real Action Paintball, Inc.,*
751 F.3d 796 (7th Cir. 2014) ...................................................................12

*Agrashell, Inc.* v. *Bernard Sirotta Co.,*
344 F.2d 583 (2d Cir. 1965)......................................................................14n

*American Land Program, Inc.* v. *Bonaventura Uitgevers Maatschappij, N.V.,*
710 F.2d 1449 (10th Cir. 1983) .................................................................16n

*American Realty Trust, Inc.* v. *Hamilton Lane Advisors, Inc.,*
115 F. App'x 662 (5th Cir. 2004) ..............................................................16n

*Arma* v. *Buyseasons, Inc.,*
591 F. Supp. 2d 637 (S.D.N.Y. 2008)........................................................12n

*Arnold* v. *Goldstar Financial Systems, Inc.,*
2002 WL 1941546 (N.D. Ill. Aug. 22, 2002) .............................................15

*Asahi Metal Industry Co.* v. *Superior Court,*
480 U.S. 102 (1987)....................................................................19-20, 22n, 24

*AVRA Surgical Robotics, Inc.* v. *Gombert,*
2014 WL 4203089 (S.D.NY. Aug. 22, 2014).............................................13, 19

*Best Cellars Inc.* v. *Grape Finds at Dupont, Inc.,*
90 F. Supp. 2d 431 (S.D.N.Y. 2000).........................................................16

*Beydoun* v. *Wataniya Restaurants Holding, Q.S.C.,*
768 F.3d 499 (6th Cir. 2014) ....................................................................10, 18

*Boschetto* v. *Hansing,*
539 F.3d 1011 (9th Cir. 2008) ..................................................................14

*Burger King Corp.* v. *Rudzewicz,*
471 U.S. 462 (1985).......................................................................10, 14, 14n, 24

*Calder* v. *Jones,*
465 U.S. 783 (1984)..................................................................................10

*Chew* v. *Dietrich*,
   143 F.3d 24 (2d Cir. 1998)....................................................................10, 13, 18

*Chloé* v. *Queen Bee, LLC*,
   616 F.3d 158 (2d Cir. 2010)............................................................................5

*Clopay Plastic Products Co.* v. *Excelsior Packaging Group, Inc.*,
   2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014)........................................10

*Daimler AG* v. *Bauman*,
   134 S. Ct. 746 (2014) ....................................................... 1-2, 7-8, 19-20, 22-24

*Daniel* v. *American Board of Emergency Medicine*,
   428 F.3d 408 (2d Cir. 2005)...............................................22n, 23, 24n

*Evolution Online Sys., Inc.* v. *Koninklijke PTT Nederland N.V.*,
   145 F.3d 505 (2d Cir. 1998)...................................................................15n

*In re Fannie Mae 2008 Securities Litigation*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012)..................................................21n

*First Capital Asset Management, Inc.* v. *Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002)...................................................21

*In re Fosamax Products Liability Litigation*,
   2011 WL 1584584 (S.D.N.Y. Apr. 27, 2011).......................................2n

*Go-Video, Inc.* v. *Akai Electric Co.*,
   885 F.2d 1406 (9th Cir. 1989).................................................23n, 24n

*Goldsmith* v. *Sill*,
   2013 WL 1249707 (D. Nev. Mar. 26, 2013) ......................................15n

*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*,
   131 S. Ct. 2846 (2011)........................................................................ 6-7

*Gucci America, Inc.* v. *Weixing Li*,
   768 F.3d 122, 135 (2d Cir. 2014)........................................ 8-9, 19, 24n

*Heathmount A.E. Corp.* v. *Technodome.com*,
   106 F. Supp. 2d 860 (E.D. Va. 2000) .................................................18n

*Inc.* v. *Imago Eyewear Pty, Ltd.*,
   167 F. Appx. 518 (6th Cir. 2006).........................................................18

*J. McIntyre Machinery, Ltd.* v. *Nicastro*,
   131 S. Ct. 2780 (2011)..................................................................10, 18

*Jazini* v. *Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)....................................................................5, 17n, 25

*Leviton Manufacturing Co.* v. *Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) ..................................................................14

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  935 F. Supp. 2d 666 (S.D.N.Y. 2013)............................................................11, 20

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)............................................................................10, 19

*In re Magnetic Audiotape Antitrust Litigation*,
  334 F.3d 204 (2d Cir. 2003)................................................................................23n

*Menowitz* v. *Brown*,
  991 F.2d 36 (2d Cir. 1993).....................................................................................6

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*,
  2005 WL 106936 (S.D.N.Y. Jan. 18, 2005) .........................................................6n

*Metropolitan Life Insurance Co.* v. *Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)....................................................................................19

*Navaera Sciences, LLC* v. *Acuity Forensic Inc.*,
  667 F. Supp. 2d 369 (S.D.N.Y. 2009)...................................................................14

*NewLead Holdings Ltd.* v. *Ironridge Global IV Ltd.*,
  2014 WL 2619588 (S.D.N.Y. June 11, 2014) .......................................................9n

*NovelAire Technologies, L.L.C.* v. *Munters AB*,
  2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)........................................................25

*Omni Capital International, Ltd.* v. *Rudolf Wolff & Co.*,
  484 U.S. 97 (1987)...............................................................................................22n

*Ony, Inc.* v. *Cornerstone Therapeutics, Inc.*,
  2012 WL 1835671 (W.D.N.Y. May 18, 2012), *aff'd*, 720 F.3d 490 (2d Cir. 2013) ............18n

*ONY, Inc.* v. *Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013)................................................................................20n

*Penguin Group (USA) Inc.* v. *American Buddha*,
  609 F.3d 30 (2d Cir. 2010).....................................................................................5

*Perkins* v. *Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952)............................................................................................8-9

*Porina* v. *Marward Shipping Co.*,
521 F.3d 122 (2d Cir. 2008)................................................................22-23

*Premium Plus Partners, L.P.* v. *Davis*,
2005 WL 711591 (N.D. Ill. Mar. 28, 2005)..................................................22n

*Recurrent Capital Bridge Fund I, LLC* v. *ISR Systems and Sensors Corp.*,
875 F. Supp. 2d 297 (S.D.N.Y. 2012)....................................................14

*Refco Group Ltd., LLC* v. *Cantor Fitzgerald, L.P.*,
2014 WL 2610608 (S.D.N.Y. June 10, 2014) ...............................7, 10

*Reich* v. *Lopez*,
2014 WL 4067179 (S.D.N.Y. Aug. 18, 2014)..............................20-21

*Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ...........................................22n-23n

*Robinson* v. *Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994).................................................................5

*Rockwood Select Asset Fund XI (6)-1, LLC* v. *Devine, Millimet & Branch*,
750 F.3d 1178 (10th Cir. 2014) ..........................................................12n

*In re Roman Catholic Diocese, Inc.*,
745 F.3d 30 (2d Cir. 2014).................................................................6, 9

*Royalty Network Inc.* v. *Dishant.com, LLC*,
638 F. Supp. 2d 410 (S.D.N.Y. 2009)..................................................17

*In re Satyam Computer Services Ltd. Securities Litigation*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013)..................................................16

*See, Inc.* v. *Imago Eyewear Pty, Ltd.*,
167 F. App'x 518 (6th Cir. 2006) ......................................................18n

*In re Ski Train Fire in Kaprun, Austria*,
2004 WL 2674644 (S.D.N.Y. Nov. 23, 2004)....................................12n

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
343 F. Supp. 2d 208 (S.D.N.Y. 2004)..................................................6

*Sonera Holding B.V.* v. *Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014)........................6-9, 9n

*Sunward Electronics, Inc.* v. *McDonald*,
362 F.3d 17 (2d Cir. 2004).................................................................13, 21

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)..................................................................6, 12n

*Two's Company, Inc.* v. *Hudson*,
   2014 WL 903035 (S.D.N.Y. Mar. 6, 2014) ................................................17

*Tymoshenko* v. *Firtash*,
   2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .............................................15

*United Mine Workers of America* v. *Gibbs*,
   383 U.S. 715 (1966)..................................................................................21n

*United States* v. *Botefuhr*,
   309 F.3d 1263 (10th Cir. 2002) .................................................................21n

*Unspam Technologies, Inc.* v. *Chernuk*,
   716 F.3d 322 (4th Cir. 2013) .....................................................................16n

*Wachovia Bank N.A.* v. *Schmidt*
   546 U.S. 303 (2006)....................................................................................4n

*Walden* v. *Fiore*,
   134 S. Ct. 1115 (2014)...................................... 1, 9-11, 13, 13n, 15, 15n, 23

*Wilder* v. *News Corp., Litigation*,
   2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014) ...........................................16

## CONSTITUTIONAL PROVISIONS

Fifth Amendment ................................................................................................22

Fourteenth Amendment ......................................................................................22

## RULES & STATUTES

Federal Rule of Civil Procedure 12(b)(2) ......................................................1, 25

7 U.S.C. § 25(c) (CEA).................................................................................. 5, 21-22

15 U.S.C. § 22 (Clayton Act)......................................................................... 5, 20-22

18 U.S.C. § 1965 (RICO)...............................................................................5, 21

## OTHER AUTHORITY

Charles Alan Wright & Arthur R. Miller
   FEDERAL PRACTICE AND PROCEDURE (3d ed. 2002) ................................21

Peter Hay et al., CONFLICT OF LAWS (5th ed. 2010) .................................22 n.30

Defendants respectfully submit this joint memorandum of law in support of their motions to dismiss the captioned complaints ("Direct Actions") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

Earlier this year, the Supreme Court issued two opinions that effected a dramatic shift in personal jurisdiction law.  In *Daimler AG* v. *Bauman*, 134 S. Ct. 746, 762 n.20, 763 (2014), the Supreme Court established that, absent exceptional circumstances, corporations are "at home" and, consistent with the constitutional guarantee of due process, subject to general jurisdiction only where they are incorporated or have their principal place of business.  Under *Daimler*, the foreign bank defendants and the British Bankers' Association are "at home" only in their respective home countries, and not in any of the various states where the Direct Actions were filed.  The domestic bank defendants are "at home" only where they are incorporated or have their principal place of business and are therefore not subject to general jurisdiction in other states.

The second Supreme Court case, *Walden* v. *Fiore*, addresses specific jurisdiction and makes clear that a defendant's knowledge of the plaintiffs' residence, and thereby knowledge of the location of any alleged harm, is insufficient to permit specific jurisdiction over a nonresident defendant.  134 S. Ct. 1115, 1125 (2014).  The Court observed that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way."  *Id.*

As this Court has recognized and as Plaintiffs allege, the benchmark at the center of this multi-district litigation, USD LIBOR, was at all relevant times administered by a British trade association and based upon submissions from panel banks in London.  For foreign banks, these submissions originated either from London or the bank's home country.  Similarly, USD LIBOR submissions by domestic banks were made by employees outside of the United States.

Even though the Direct Actions originally were filed in several different forums, thereby implicating each forum state's long-arm statute, this makes no difference. The exercise of jurisdiction over defendants does not comport with constitutional due process protections following *Daimler* and *Walden*.[1]

## FACTUAL BACKGROUND

### A.  The Defendants

For purposes of this motion, there are four general categories of defendants: Foreign Banks, Foreign Bank Subsidiaries, Domestic Banks, and the BBA.[2]  Accompanying this brief, joint Schedule G lists each Direct Action and those Defendants seeking dismissal, and Appendix 1 provides summary information for each defendant based upon the declarations filed concurrently herewith.

#### 1.  *The Foreign Banks*

Foreign Banks are those Defendants headquartered and organized under the laws of a foreign country—either Canada, various countries in Europe, or Japan:  The Bank of Tokyo-Mitsubishi UFJ, Ltd., Barclays Bank PLC, Barclays PLC, Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Deutsche Bank AG, HSBC Holdings plc, HSBC Bank plc, The Hong Kong and Shanghai Banking Corporation Ltd., J.P. Morgan Markets Limited (f/k/a Bear,

---

[1]    The Direct Actions originally were filed in California, Iowa, Kansas, New Jersey, New York, Ohio, Pennsylvania, Texas, and Virginia (the "Challenged Jurisdictions").  Not all Defendants move to dismiss actions from every jurisdiction, and reference to the Challenged Jurisdictions should be read to refer only to those jurisdictions insofar as they are being challenged by each respective defendant.  For example, when we submit that none of the defendants is "at home" in any of the Challenged Jurisdictions, we mean that none of the defendants is at home in any of the jurisdictions that they are challenging.  Plaintiffs in the *Principal* actions purport to waive remand to Iowa.  *See Principal Funds, Inc.  et al.* v. *Bank of Am. Corp. et al.*, 13-cv-6013 (Am. Compl. ¶ 8); *Principal Fin. Grp., Inc. et al.* v. *Bank of Am. Corp. et al.*, 13-cv-6014 (Am. Compl. ¶ 8).  Plaintiffs are not permitted to unilaterally waive remand, and the case should be assessed based upon contacts with Iowa, not New York.  *In re Fosamax Products Liability Litigation*, 2011 WL 1584584, at *1 (S.D.N.Y. Apr. 27, 2011) ("transferee court lacks authority to conduct a trial of an MDL member case not originally filed in the transferee court without the consent of the parties").

[2]    The BBA collectively refers to defendants British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd.  The Foreign Banks, Foreign Bank Subsidiaries, and Domestic Banks are referred to collectively as the "Bank Defendants," and, together with the BBA, the "Defendants."  References to "Banks" as a defined term is a term of convenience, even though some of the entities are not "banks."

Stearns International Limited), J.P. Morgan Dublin plc (f/k/a JPMorgan Bank Dublin plc) (f/k/a Bear Stearns Bank plc), Lloyds Banking Group plc, Lloyds Bank plc (f/k/a Lloyds TSB Bank plc), HBOS plc, Merrill Lynch International Bank, Ltd., Norinchukin Bank, Portigon AG, Westdeutsche ImmobilienBank AG, Royal Bank of Canada, The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, Société Générale, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank"), UBS AG, and UBS Limited.  The Foreign Banks' contacts with the Challenged Jurisdictions—if any—represent a comparatively small portion of their business compared to the activities of the Foreign Banks as a whole.  *See* Appendix 1 (e.g., comparatively small portions of Foreign Bank's offices, employees, and/or revenues are located in Challenged Jurisdictions).  Unless otherwise noted and as reflected in Schedule G, each of the Foreign Banks moves to dismiss complaints from all of the Challenged Jurisdictions in which it is named as a defendant.[3]

2.    *Certain Foreign Banks' Domestic Subsidiaries*

The Foreign Bank Subsidiaries are subsidiaries of certain Foreign Banks that are headquartered and incorporated in the United States: Barclays Capital Inc., Credit Suisse (USA) Inc., Credit Suisse Securities (USA) LLC, Deutsche Bank Securities, Inc., LLC, and UBS Securities LLC.  The Foreign Bank Subsidiaries have their principal place of business in New York and are incorporated in Delaware, Connecticut, or Minnesota.   The Foreign Bank Subsidiaries' contacts with the Challenged Jurisdictions represent a comparatively small portion of their business compared to their activities as a whole.  *See* Appendix 1 (e.g., comparatively small portions of Foreign Bank Subsidiaries' offices, employees, and/or revenues are located in Challenged Jurisdictions).  The Foreign Bank Subsidiaries move to dismiss complaints from the Challenged Jurisdictions other than New York as reflected in Schedule G.

---

[3]       UBS AG does not seek dismissal of actions filed in New York for lack of personal jurisdiction.

3.    *The Domestic Banks*

Domestic Banks are those Defendants headquartered and incorporated in the United States:  Banc of America Securities, LLC (n/k/a Merrill Lynch, Pierce, Fenner & Smith Inc.); Bank of America Corporation, Citigroup Inc., Citigroup Global Markets, Inc., Citigroup Financial Products, Inc., Citigroup Funding Inc., Citi Swapco Inc., JPMorgan Chase & Co., Merrill Lynch & Co., Inc., and Merrill Lynch Capital Services, Inc. are corporations incorporated in Delaware and New York, and Bank of America, N.A., Citibank, N.A., HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A. are national banks incorporated under the laws of the United States.[4]  The Domestic Banks move to dismiss complaints from the Challenged Jurisdictions as reflected in Schedule G.

4.    *British Bankers' Association*

The British Bankers' Association is a trade association under English law located in London.  The British Bankers' Association has two affiliated entities: BBA Enterprises Ltd. and BBA LIBOR Ltd., both of which are companies registered in England and Wales.  The BBA's principal place of business is London, England.  The BBA moves to dismiss complaints from all of the Challenged Jurisdictions in which it is named as a defendant.

**B.    Jurisdictional Allegations in the Direct Action Complaints**

Appendix 2 sets forth the relevant jurisdictional allegations in the Direct Action complaints.  In general terms, the Direct Actions include allegations concerning the USD LIBOR benchmark and the alleged manipulation thereof.[5]  For example, the Direct Action complaints recognize that the USD LIBOR benchmark is based upon submissions to the BBA in London.[6]  Other jurisdictional allegations include assertions that: (i) Defendants should have foreseen that a

---

[4]    Although national banks are incorporated under the laws of the United States, they are not incorporated in every state, and the same *Daimler* analysis should apply.  *Cf. Wachovia Bank, N.A.* v. *Schmidt*, 546 U.S. 303, 307, 317 (2006) (a national bank is not a citizen of every state in which it has a branch office but rather "a citizen of the State in which its main office, as set forth in its articles of association, is located").

[5]    References to Appendix 2 herein are to paragraphs of Direct Action amended complaints listed by plaintiff which are reproduced verbatim in the Appendix.

[6]    *See, e.g.,* Direct Action Plaintiffs' Consol. First Am. Compl. (MDL Dkt. #684) ¶¶ 67, 72, 74, 79.

plaintiff would be injured in the Challenged Jurisdictions (*see, e.g.*, Appendix 2 at 1 (Direct Actions ¶ 27)); (ii) some Defendants allegedly conspired to manipulate USD LIBOR in the Challenged Jurisdictions (*see, e.g.*, *id.* (Fed. Home Loan Mortg. Corp. ¶ 14)); (iii) some Bank Defendants entered into contracts with Plaintiffs in a Challenged Jurisdiction (*see, e.g.*, *id.* (Fed. Nat'l Mortg. Ass'n ¶ 13)); or (iv) the BBA "advertised" USD LIBOR in the United States through its website, *The Wall Street Journal*, and third-party data vendors (*see, e.g.*, *id.* (Fed. Home. Loan. Mortg. Corp. ¶ 21)).  Direct Actions asserting antitrust, RICO, or CEA claims also allege personal jurisdiction under those statutes' nationwide service provision—15 U.S.C. § 22 (Clayton Act), 18 U.S.C. § 1965 (RICO), and 7 U.S.C. § 25(c) (CEA)—even though most of those claims are subject to dismissal.

As explained below, all of these jurisdictional allegations are insufficient to support the exercise of personal jurisdiction over Defendants.

## ARGUMENT

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Group (USA) Inc.* v. *American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  *Id.* at 34-35 (citation and internal quotation marks omitted).  The *prima facie* showing "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant."  *Chloé* v. *Queen Bee, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citation and internal quotation marks omitted).  The Court need not "draw argumentative inferences in the plaintiff's favor," *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation and internal quotation marks omitted), nor accept as true "legal conclusion couched as factual allegation." *Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (citation and internal quotation marks omitted).

Personal jurisdiction can be general (all-purpose) or specific (conduct-linked).  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013).  "A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation—even those entirely unrelated to the defendant's contacts with the state."  *Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) (emphasis in original).  Specific jurisdiction "'depends on an affiliation[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'"  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846, 2851 (2011)).  "Because general jurisdiction is not related to the events giving rise to the suit, . . . courts impose a more stringent minimum contacts test."  *In re Roman Catholic Diocese, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (citation and internal quotation marks omitted).

I.      **THE DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THE CHALLENGED JURISDICTIONS.**

The personal jurisdiction inquiry requires a two-step analysis: first, whether the defendant is subject to jurisdiction under the law of the forum state; and second, whether exercise of jurisdiction comports with due process.  *Sonera*, 750 F.3d at 224.  In multi-district litigation, this Court exercises personal jurisdiction to the extent (and only to the extent) that each transferor court could.  *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004); *Menowitz* v. *Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (applying state law of transferor court and federal law as interpreted by transferee court).[7]  Where the exercise of personal jurisdiction is incompatible with due process—as it is here—the court need not assess

---

[7]      In resolving questions of federal law, such as due process under the United States Constitution, this Court applies Second Circuit precedent.  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2005 WL 106936, at *5 (S.D.N.Y. Jan. 18, 2005) ("In sum, Second Circuit precedent controls this Court's interpretation of federal law in this multi-district litigation.").

each jurisdiction's long-arm statue.  *See Sonera*, 750 F.3d at 224 (no need to address long-arm statute where jurisdiction incompatible with due process).[8]

### A.    Plaintiffs Cannot Demonstrate General Jurisdiction Because None of the Defendants Is "At Home" in the Challenged Jurisdictions.

Under the Supreme Court's recent opinion in *Daimler*, "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  134 S. Ct. at 751 (quoting *Goodyear*, 131 S. Ct. at 2851).  "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] bases for general jurisdiction."  *Id.* at 760 (citation and internal quotation marks omitted).  Following *Daimler*, to exercise jurisdiction over a foreign corporation, "[e]ssentially, the foreign entity must be 'comparable to a domestic enterprise in that State.'"  *Refco Group Ltd., LLC* v. *Cantor Fitzgerald, L.P.*, 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014) (quoting *Daimler*, 134 S. Ct. at 758 n.11).

None of the Defendants is "at home" in any of the Challenged Jurisdictions.  As most Plaintiffs recognize in their complaints, and as set forth in the declarations submitted by each Foreign Bank and the BBA (summarized in Appendix 1), these Defendants all have their respective places of incorporation and principal places of business in Europe, Canada, or Japan.  The Domestic Banks and Foreign Bank Subsidiaries seek to dismiss actions filed in jurisdictions other than their principal place of business or state of incorporation.  *See id.*  That is, each of the Defendants seeks to dismiss only those actions filed against them in jurisdictions where they are not "at home."

Nor is this the type of "exceptional case" that would justify the exercise of personal jurisdiction outside of the Defendants' place of incorporation or principal place of business.  While *Daimler* did not hold that "a corporation may be subject to general jurisdiction *only* in a

---

[8]     Because the exercise of jurisdiction over Defendants would be incompatible with due process, Defendants do not individually set forth each Challenged Jurisdiction's long-arm statute.

forum where it is incorporated or has its principal place of business," 134 S. Ct. at 760 (emphasis in original), the Supreme Court clarified that an "exceptional case" would require contacts that are "so substantial and of such a nature as to render the corporation at home in that State," *id.* at 761 n. 19.  The example of an "exceptional case" the Court provided demonstrates just how narrow this exception is.  In *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the defendant company had been incorporated in the Philippines, where it operated gold and silver mines.  During World War II, it was forced to close its mining operations and move its president to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities" during the War.  *Daimler*, 134 S. Ct. at 756.  The Court held the company was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business."  *Id.* (citation and internal quotation marks omitted).  The factors justifying jurisdiction over the defendant in *Perkins* are not present against any Defendant here.

The Second Circuit's application of *Daimler* further demonstrates that Defendants' comparatively small contacts with the Challenged Jurisdictions are insufficient to find general jurisdiction.  In *Gucci America, Inc.* v. *Weixing Li*, the Second Circuit held that a foreign bank (Bank of China) was not subject to general jurisdiction in New York even though the bank had branch offices in New York because it was "incorporated and headquartered elsewhere." 768 F.3d 122, 135 (2d Cir. 2014).  The Second Circuit explained that the "at home" test means that "a corporation may nonetheless be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state."  *Id.* (quoting *Daimler*, 134 S. Ct. at 761-62).  Because only a small part of Bank of China's "worldwide business [was] conducted in New York," the court held there was no general jurisdiction, even if subsidiaries' contacts were considered.  *Id.*

In another case, the Second Circuit explained that "'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render [a company] at home in a forum."  *Sonera*, 750 F.3d at 226 (citation omitted).  In *Sonera*, even imputing

-8-

contacts of subsidiaries, the relevant inquiry following *Daimler* is whether the subsidiaries' contacts with the forum would "shift the company's primary place of business (or place of incorporation) away from" its home country.  *See id.* ("Even assuming [the subsidiaries'] New York contacts should be imputed to [the parent], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").[9]  In other words, the test is comparative.  *Daimler*, 134 S. Ct. at 767 (Sotomayor, J., concurring) (describing majority holding as focusing on the "relative magnitude of [a defendant's] contacts in comparison to the defendant's contacts with other States").  The Court looks at what single location is the company's *de facto* primary place of business or place of incorporation.

Applying *Daimler*, *Gucci*, and *Sonera*, none of the Defendants presents an "exceptional case" within the meaning of *Daimler*.  Unlike *Perkins*, the locations of Defendants' headquarters and principal places of business have not changed, and none of the Defendants has a different *de facto* principal place of business in any of the Challenged Jurisdictions that would render it "'essentially at home in the forum.'"  *Gucci*, 768 F.3d at 135 (quoting *Daimler*, 134 S. Ct. at 761).  Plaintiffs fail to meet their burden to show that the Defendants are "at home" in the Challenged Jurisdictions.

**B.    Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of Specific Jurisdiction.**

"[S]pecific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Roman Catholic Diocese*, 745 F.3d at 38 (citation and internal quotation marks omitted.  In *Walden*, the Supreme Court explained that in cases—such as this one—involving intentional torts, specific jurisdiction

---

[9]      In *Sonera*, the Second Circuit did not hold that courts must impute to a parent company the contacts of subsidiaries.  750 F.3d at 226 ("[W]e need not consider whether the agency principles announced in *Wiwa* survive in light of *Daimler*.").  Indeed, following *Daimler*'s critical view toward the agency analysis, courts have noted that it is no longer applicable in the context of general jurisdiction.  *See id.*; *NewLead Holdings Ltd.* v. *Ironridge Global IV Ltd.*, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014).  This Court need not reach that issue, however, because even if Defendants' subsidiaries contacts were imputed to Defendants, none of the Defendants would be "at home" in any of the Challenged Jurisdictions.

requires that "the defendant's suit-related conduct must create a substantial connection with the forum State," 134 S. Ct. at 1121, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id*. at 1122 (citation omitted) (emphasis in original), and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," *id*.  To meet this standard, Plaintiffs must show that Defendants' actions were "expressly aimed" at the forum and Plaintiffs' claims arose out of those actions.  *Calder* v. *Jones*, 465 U.S. 783, 788-89 (1984); *J. McIntyre Machinery, Ltd.* v. *Nicastro*, 131 S. Ct. 2780, 2792 (2011).

"Specific jurisdiction therefore exists where 'the claim arises out of, or relates to, the defendant's contacts with the forum.'"  *Refco*, 2014 WL 2610608, at *8 (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).  In order to be sufficient for purposes of personal jurisdiction, "there must be a 'substantial nexus' between the business and the cause of action."  *Clopay Plastic Products Co.* v. *Excelsior Packaging Group, Inc.*, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014) (citation and internal quotation marks omitted).  "[T]he Supreme Court has emphasized that only consequences that *proximately* result from a party's contacts with a forum state will give rise to jurisdiction."  *Beydoun* v. *Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985)) (emphasis in original); *see also Chew* v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (proximate cause required when defendant has limited contacts with the forum).

### 1.   *USD LIBOR Is Determined in London.*

As Plaintiffs recognize, LIBOR is determined in and published from London.[10]   This Court has already stated, with respect to the now dismissed RICO claims, that "the BBA is plainly a foreign enterprise," "[t]he [Defendant Banks] were each members of the BBA, an entity based in England, and participated in the affairs of the BBA by submitting quotes each day to the

---

[10]        *See, e.g.,* Direct Action Plaintiffs' Consol. First Am. Compl. (MDL Dkt. #684) at ¶¶ 67, 72, 74, 79.

BBA," and "[t]he decision making of the alleged enterprise likely occurred in several different countries." *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F. Supp. 2d 666, 733-34 (S.D.N.Y. 2013).   The complaints do not—and cannot—allege that the LIBOR submissions occurred in any of the Challenged Jurisdictions, and, as the declarations submitted with this motion demonstrate, they did not.

> ### 2.   *Plaintiffs' Specific Jurisdiction Allegations Are Insufficient to Demonstrate Personal Jurisdiction.*

The Plaintiffs amended their complaints to include allegations that purportedly support the exercise of personal jurisdiction.   Appendix 2 lists these allegations.   In general, Plaintiffs allege specific jurisdiction because: (i) Defendants should have known that Plaintiffs would have been injured in the Challenged Jurisdictions; (ii) certain Plaintiffs' contracts with certain Defendants provide sufficient contacts; (iii) Defendants participated in a conspiracy in the Challenged Jurisdictions; and (iv) the BBA advertised USD LIBOR through a variety of globally accessible media channels.   None of these allegations supports personal jurisdiction over Defendants in the Challenged Jurisdictions.

> ### a.   Foreseeable Harm Is Insufficient to Establish Specific Jurisdiction.

In *Walden*, the Supreme Court explained that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."   134 S. Ct. at 1121 (citation and internal quotation marks omitted).   To confer specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State," *id*., "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id*. at 1122 (citation omitted) (emphasis in original), and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there."   *Id*.

*Walden* makes plain that the foreseeability of harm to the plaintiff in its home jurisdiction is insufficient to satisfy due process.   The Supreme Court held that a Nevada court could not constitutionally "exercise personal jurisdiction over a defendant on the basis that he knew his

allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." *Id.* at 1119; *see also id.* at 1121-23.  Applying *Walden*, the Seventh Circuit held that a defendant's knowledge that the plaintiff was an Indiana company that could foreseeably be harmed in Indiana did not establish specific jurisdiction in Indiana.  *Advanced Tactical Ordnance Systems, LLC* v. *Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum,'" and "[a]ny decision that implies otherwise can no longer be considered authoritative.").[11]

Instead, Plaintiffs must demonstrate sufficient suit-related conduct or contacts with the Challenged Jurisdictions to support specific jurisdiction.  Because Plaintiffs have failed to allege any such contacts, exercise of specific jurisdiction over Defendants in the Challenged Jurisdictions does not comport with due process.  *See, e.g.*, Appendix 2 at 7-8 (Schwab ¶ 21).

b.   Plaintiffs' Contracts Do Not Permit Jurisdiction Over Any of the Contracting Defendants.

Some Plaintiffs allege they entered into contracts ("Contracting Plaintiffs") with one or more Bank Defendants ("Contracting Defendants").  *See, e.g.*, Appendix 2 at 6 (Principal Fund ¶ 10).  Where a Contracting Plaintiff identified a specific contract with a Contracting Defendant that contains a forum selection clause providing for personal jurisdiction in the forum where the case was originally filed (e.g., New York),[12] Contracting Defendants do not move to dismiss claims falling within the scope of the clause.[13]   Absent consent, Plaintiffs fail to establish

---

[11]   *See also In re Terrorist Attacks*, 714 F.3d at 674 ("[T]he fact that harm in the forum is foreseeable . . . is insufficient for purpose of establishing specific personal jurisdiction over a defendant."); *Rockwood Select Asset Fund XI (6)-1, LLC* v. *Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum State.").

[12]   Plaintiffs who filed their actions in courts outside of New York cannot rely upon a New York forum selection cause as a basis for personal jurisdiction.  *See In re Ski Train Fire in Kaprun, Austria*, 2004 WL 2674644, at *2 n.35 (S.D.N.Y. Nov. 23, 2004) (in an MDL jurisdiction must exist in the transferor court).

[13]   Contracting Defendants' consent to personal jurisdiction by virtue of a forum selection clause is limited to claims stemming from the contract(s) alleged, and does not extend to the Contracting Plaintiffs' antitrust, RICO, fraud, or any other claims not dependent on the specific contract(s) alleged in the complaints.  *See*

*(continued . . . )*

personal jurisdiction for *all* of Plaintiffs' claims (contract and non-contract claims) based upon these contracts.[14]

As a preliminary matter, the alleged contracts have nothing to do with the "suit-related conduct," *Walden*, 134 S. Ct. at 1121, which is the alleged manipulation of LIBOR, necessary to serve as a basis for personal jurisdiction.  *See also Chew*, 143 F.3d at 29 (defendants "will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts"); *see, e.g., AVRA Surgical Robotics, Inc.* v. *Gombert*, 2014 WL 4203089, at *7 (S.D.N.Y. Aug. 22, 2014) ("[A]ll the relevant alleged conduct occurred thousands of miles away in Germany" and "[t]o the extent that [defendant] did transact business in New York . . . the complaint does not establish how, if at all, these activities relate—much less substantially relate—to the causes of actions pled.").[15]  The complaints do not allege that any of the individual contracts were a part of that alleged manipulative conduct, only that Contracting Plaintiffs suffered injury under the contracts.  And many of the Contracting Plaintiffs' claims—such as fraud and tortious interference claims against non-contracting Defendants—are not based on a contract with the Defendants at all.  *See, e.g., Sunward Electronics, Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("plaintiff must establish the court's jurisdiction with respect to *each* claim asserted").

_____

(. . . continued)

> *Arma* v. *Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) ("Where, as in the present action, the rights being asserted do not originate from the contract containing the forum selection clause, the clause does not apply.").  Schedule G notes by asterisks (*) claims subject to a forum section clause that a Contracting Defendant does not seek dismissal for lack of personal jurisdiction.

[14]  As explained in, e.g., Defendants' Motion to Dismiss the Fraud and Related Claims brief (and others), certain fraud (and other claims) should be dismissed because they are duplicative of the breach of contract claims.  However, should these plaintiffs contend the fraud and other claims are not duplicative, the plaintiffs cannot rely upon the contract's forum selection clause to obtain personal jurisdiction over Contracting Defendants.

[15]  Similarly, the fact that plaintiffs, such as Schwab (*see, e.g.*, Appendix 2 at 7-8 (Schwab ¶ 21)), purchased securities through their California trading desks are not contacts created by Defendants related to plaintiff's cause of action that permit the exercise of specific jurisdiction in a forum state.  *See Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.") (citations omitted).

But even assuming both that a Contracting Plaintiff's claim is based on its contract with a Defendant and that the contract was somehow related to Defendants' allegedly false LIBOR submissions, Contracting Plaintiffs have not shown how the contracts link Contracting Defendants to the Challenged Jurisdictions.  Entry into a contract alone with a forum resident is insufficient to confer jurisdiction.  *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original); *see also Boschetto* v. *Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("As the Supreme Court has expressly cautioned, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum.").  Nor does a contract with a substantive choice-of-law provision alone establish personal jurisdiction in that forum.  *See Navaera Sciences, LLC* v. *Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375, 377 (S.D.N.Y. 2009).[16]  *See, e.g.*, Appendix 2 at 6 (Principal Fund Compl. ¶ 10).  Other than alleging a contractual relationship, most Contracting Plaintiffs allege no other contacts with the Challenged Jurisdiction related to the formation of the contract or its performance.

While Contracting Defendants do not challenge personal jurisdiction where a forum selection clause provides provides personal jurisdiction over the Contracting Plaintiffs' claim, Contracting Plaintiffs cannot rely upon that forum selection clause to obtain personal jurisdiction over any defendant who was not a party to the contract.  *See Recurrent Capital Bridge Fund I, LLC* v. *ISR Systems and Sensors Corp.*, 875 F. Supp. 2d 297, 306-08 (S.D.N.Y. 2012).  Non-contracting Defendants simply are not bound by the forum selection clauses.  *See Leviton Manufacturing Co.* v. *Reeve*, 942 F. Supp. 2d 244, 264 (E.D.N.Y. 2013) (distinguishing signatories of a contract containing a forum selection clause from non-signatories for purposes of

---

[16]     *See Burger King*, 471 U.S. at 482 (choice-of-law provision "standing alone would be insufficient to confer jurisdiction"); *Agrashell, Inc.* v. *Bernard Sirotta Co.*, 344 F.2d 583, 588 (2d Cir. 1965) ("The choice of law provision cannot be construed as a voluntary submission by [defendant] to the personal jurisdiction of the New York courts in the absence of any express contractual understanding to that effect.").

determining personal jurisdiction).   And unrelated Plaintiffs bringing suit under different contracts (or no contracts) cannot rely upon forum selection clauses of contracts to which they are not a party.  *See Arnold* v. *Goldstar Financial Systems, Inc.*, 2002 WL 1941546, at *3 (N.D. Ill. Aug. 22, 2002) ("The personal jurisdiction analysis therefore must be plaintiff-specific.").[17]

     c.  Plaintiffs Do Not Sufficiently Allege a Conspiracy as a Basis to Confer Jurisdiction over Defendants.

   Some Direct Actions also allege that Defendants are subject to personal jurisdiction in the Challenged Jurisdictions because they allegedly participated in a conspiracy in one of those jurisdictions.  *See, e.g.*, Appendix 2 at 3, 11 (Fed. Home Loan Mortg. Corp. ¶ 14).   Prior to *Walden*, the assertion of "personal jurisdiction over a defendant . . . through the imputation of contacts of that defendant's putative co-conspirators . . . ha[d] been widely criticized by courts and scholars."  *Tymoshenko* v. *Firtash*, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (citation and internal quotation marks omitted).[18]  *Walden* further undermines such a theory.   In *Walden*, the Supreme Court emphasized that personal jurisdiction must be based upon "contacts the defendant *himself* creates with the forum State," 134 S.Ct. at 1122 (emphasis in original) (citation and internal quotation marks omitted), and cannot be based upon the contacts of third parties, *see id.*, as personal jurisdiction based upon a conspiracy would.[19]  Plaintiffs' assertion of personal jurisdiction based on a putative conspiracy fails as a matter of law.

---

[17] Plaintiff Prudential Investment Portfolios 2 ("Prudential"), on behalf of Prudential Core Short-Term Bond Fund ("Core STB"), was contractually prohibited from suing defendant Deutsche Bank AG in the District of New Jersey for any claim relating to Core STB's ISDA Master Agreement with Deutsche Bank AG – in particular Prudential's fifth cause of action (breach of contract against the swap defendants) and sixth cause of action (breach of the implied covenant of good faith and fair dealing as against the swap defendants).  Core STB's ISDA Master Agreement, as amended, provides for exclusive jurisdiction in New York.  *See* Declaration of Allison Cambria, Exhibit A at § 13(b), Exhibit B at Part 4, § (j); Exhibit C (amendment listing as a party to the ISDA Master Agreement Core STB's predecessor entity Dryden Core Investment Fund: Core Short Term Bond Series).  The Court should dismiss these claims for failure to state a claim. *See Evolution Online Sys., Inc.* v. *Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6  (2d Cir. 1998).

[18] *See also Goldsmith* v. *Sill*, 2013 WL 1249707, at *5 n.1 (D. Nev. Mar. 26, 2013) (noting that the Ninth Circuit has never adopted a conspiracy theory of personal jurisdiction and predicted it would not).

[19] *See id.* ("We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.") (citation omitted).

But even if such a theory were viable, Plaintiffs' conclusory allegations of jurisdiction by conspiracy are insufficient.  To establish specific jurisdiction based on a conspiracy theory under New York law, a plaintiff must: "(1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction."  *Wilder* v. *News Corp., Litigation*, 2014 WL 1315960, at *6 (S.D.N.Y. Mar. 31, 2014) (citation and internal quotation marks omitted); *see also In re Satyam Computer Services Ltd. Securities Litigation*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) (dismissing claims against foreign defendants because plaintiffs failed to allege facts "which connect [the foreign defendants] with transactions occurring in the United States").[20]

Under New York law, a *prima facie* case of conspiracy requires allegations of a corrupt agreement, an overt act in furtherance of the agreement, the parties' intentional participation in acts in furtherance of a plan or purpose, and resulting damage or injury.  *See Best Cellars Inc.* v. *Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000).  But Plaintiffs offer nothing more than conclusory statements that Defendants engaged in a conspiracy.  None of Plaintiffs' allegations supports conspiracy; and none the complaints aver that any alleged co-conspirator engaged in a tortious act pursuant to that conspiracy in the Challenged Jurisdictions. Because Plaintiffs have not established a plausible basis for finding a conspiracy, let alone one in each of the Challenged Jurisdictions, they cannot demonstrate specific jurisdiction.

> d.    The BBA's Communications about USD LIBOR Do Not Establish
>        Specific Jurisdiction Over the BBA or the Bank Defendants.

The crux of Plaintiffs' hodgepodge of jurisdictional allegations against the BBA is that the BBA published and promoted LIBOR through its own and third-party Internet websites and

---

[20]    Other Circuits similarly require plaintiffs to plausibly allege a conspiracy to establish personal jurisdiction, which Plaintiffs do not.  *See, e.g., Unspam Technologies, Inc.* v. *Chernuk*, 716 F.3d 322 (4th Cir. 2013) (conclusory allegations insufficient to establish personal jurisdiction); *American Realty Trust, Inc.* v. *Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 n.16 (5th Cir. 2004) (same), *American Land Program, Inc.* v. *Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (same).

social media, which were accessible through the Internet in the forum states.[21]   That is not enough.[22]   Plaintiffs do not allege, nor can they, what would be required: namely, that these electronic communications were purposefully directed at the Challenged Jurisdictions.   Placing information on the Internet, resulting in global availability—which is all that Plaintiffs allege—is plainly insufficient.   *See, e.g.*, *Royalty Network Inc.* v. *Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (passive websites "[do] not without more justify the exercise of jurisdiction over the defendant") (citation and internal quotation marks omitted); *A.W.L.I. Group, Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 573 (E.D.N.Y. 2011) ("Moreover, the fact that the website can be viewed in New York . . . . is similarly insufficient to make a *prima facie* showing of personal jurisdiction.").

The same analysis applies even if the BBA were "selling" LIBOR through its website, social media, or data vendors—which Plaintiffs do not, and cannot, allege.   Absent activities that manifestly target the forum state, even interactive Internet websites permitting users to contact and purchase products from an out-of-state defendant cannot confer specific jurisdiction.   *Two's Company, Inc.* v. *Hudson*, 2014 WL 903035, at *5 (S.D.N.Y. Mar. 6, 2014) (no personal jurisdiction where "[d]efendant's website allows customers to fill out a purchase order form

---

[21]   Plaintiffs inaccurately describe Thomson Reuters as the BBA's "agent" for calculating and distributing LIBOR.   FDIC Compl. 65-66; Freddie Mac Compl. 72-73.   In fact, the BBA's website describes Thomson Reuters as its "designated calculation agent for [LIBOR]," but not its agent for purposes of distributing LIBOR.   BBA LIBOR, Frequently Asked Questions, http://www.bbalibor.com/explained/faqs (last accessed November 3, 2014) (emphasis added).   The website further makes clear that during the time period relevant to the Direct Actions, *USD* LIBOR was only "published" as follows: (1) by licensed data vendors, financial institutions, and media outlets either upon its calculation by Thomson Reuters, or at the end of the London business day; and (2) by the financial press, such as *The Wall Street Journal* and *Financial Times*, the morning after it was calculated by Thomson Reuters.   Through its Twitter account, the BBA "tweeted" daily *GBP* LIBOR only up until February 4, 2013; and through its website, it only provided historical LIBOR data.   *Id.*; https://twitter.com/BBALIBOR

[22]   Plaintiffs attempt to establish personal jurisdiction through conclusory allegations that "Defendants each caused false interest rate information to be published in the Southern District of New York."   *See, e.g.*, Appendix 2 at 8 (Fed. Nat'l Mortg. Ass'n ¶ 27).   These generic allegations, which identify no specific facts—or any specific Defendant—are facially insufficient to justify personal jurisdiction.   *See Jazini*, 148 F.3d at 185 ("conclusory non-fact-specific jurisdictional allegations" cannot establish a *prima facie* showing of jurisdiction).

online, indicating the product or products the consumer wishes to purchase").[23]  Plaintiffs do not, and cannot, allege the BBA's communications about LIBOR were specifically tailored to the Challenged Jurisdictions, or that the BBA engaged in activities that established a permanent or continuous presence in those states; in fact, as the declaration submitted with this motion demonstrates, the opposite is true.[24]

Finally, Plaintiffs make passing reference to the BBA's registration of a U.S. trademark and the display of that trademark on its website as a basis for specific jurisdiction.  *See* Appendix 2 at 10 (FDIC ¶ 13).  But neither registering a U.S. trademark nor displaying it on the Internet for the world to see gives rise to specific jurisdiction over causes of action that are entirely unrelated to the BBA's U.S. trademark.[25]

> e.    Plaintiffs' Allegations Lack the Necessary Causal Nexus to Support Personal Jurisdiction.

Plaintiffs also fail to plead facts sufficient to meet the second prong of the Supreme Court's specific jurisdiction test—that their claims "aris[e] out of or relate[] to the [Defendants'] contacts with the forum."  *J. McIntyre Machinery, Ltd.* v. *Nicastro*, 131 S. Ct. 2780, 2788 (2011) (citation and internal quotation marks omitted).  The Second Circuit recognizes that where a defendant has only limited contacts with the forum state, the defendant "will be subject to suit in

---

[23]   *See also A.W.L.I.*, 828 F. Supp. 2d at 566 ("[O]nline advertising, even if directed at New York residents, is not sufficient to support the exercise of personal jurisdiction over a defendant when it is not 'supplemented by business transactions occurring in the state . . . or . . . accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence.'") (citation omitted).

[24]   Plaintiffs also mention in passing that the BBA communicated about LIBOR through a data vendor, IDC, which maintained offices in New York and Virginia, and that "[t]he BBA's licensees included companies located in the United States."  *See, e.g.*, Appendix 2 at 10 (FDIC ¶ 13).  Plaintiffs do not explain how these allegations are jurisdictionally relevant—because they are not.  The BBA's licensees' purported contacts with the Challenged Jurisdictions, even if they exist, are irrelevant to whether jurisdiction exists *over the BBA*.  *See, e.g., Ony, Inc.* v. *Cornerstone Therapeutics, Inc.*, 2012 WL 1835671, at *5 (W.D.N.Y. May 18, 2012) (personal jurisdiction was lacking where the defendants merely entered into a license agreement with a New York-based publisher for the purpose of publishing an article in a journal whose circulation was not limited to New York), *aff'd*, 720 F.3d 490 (2d Cir. 2013).

[25]   *See, e.g., See, Inc.* v. *Imago Eyewear Pty, Ltd.*, 167 F. App'x. 518, 523 (6th Cir. 2006) (applying for a U.S. trademark is insufficient to confer personal jurisdiction in California); *Heathmount A.E. Corp.* v. *Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000) (registering a domain name with a company located in Virginia does not give rise to personal jurisdiction in Virginia).

that state only if the plaintiff's injury was proximately caused by those contacts." *Chew*, 143 F.3d at 29; *see also Beydoun*, 768 F.3d at 508 (proximate cause required). Plaintiffs cannot satisfy but-for causation, let alone proximate causation.

By virtue of its publication in London, LIBOR reached "more than one million computer screens around the world." Appendix 2 (FDIC ¶ 13). The mere fact that disseminated information regarding LIBOR reached Plaintiffs in the Challenged Jurisdictions, however, is insufficient to establish that the BBA or any of the other Defendants proximately caused Plaintiffs' injuries. *See Avra*, 2014 WL 4203089, at *7 ("[A]ll the relevant alleged conduct occurred thousands of miles away in Germany" and "[t]o the extent that [defendant] did transact business in New York . . . the complaint does not establish how, if at all, these activities relate – much less substantially relate – to the causes of action pled."). Moreover, Plaintiffs offer only conclusory allegations of a proximate causal nexus between Defendants' specific contacts with the Challenged Jurisdictions and Plaintiffs' causes of action. Plaintiffs' claims must be dismissed for this independent reason as well.

### C.      Considerations of Fair Play, Substantial Justice, and International Comity Support Dismissal.

In both general and specific jurisdiction cases, the court must also assess whether exercising jurisdiction "would comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137. "Relevant factors at this second step of the analysis may include: '(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief. . . .'" *Licci*, 732 F.3d at 170 (quoting *Metropolitan Life Insurance Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

The Supreme Court has held that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Industry Co.* v. *Superior Court*, 480 U.S. 102, 115 (1987) (citation andinternal quotation marks omitted). "The unique burdens placed upon one who must defend oneself in a foreign legal

system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Id.* at 114.  Reflecting similar concerns, the Supreme Court in *Daimler* emphasized the importance of international comity in assessing whether personal jurisdiction may be exercised over a foreign defendant.  *Daimler*, 134 S. Ct. at 762-63.  "Other nations do not share the uninhibited approach to personal jurisdiction advanced by the Court of Appeals in this case.  In the European Union, for example, a corporation may generally be sued in the nation in which it is 'domiciled,' a term defined to refer only to the location of the corporation's 'statutory seat,' 'central administration,' or 'principal place of business.'"  *Id.* at 763 (citation omitted).

As this Court recognized in the March 29, 2013 Opinion, the alleged USD LIBOR manipulation complained of in the complaints occurred in either the Foreign Bank's home countries or in London.  *In re LIBOR*, 935 F. Supp. 2d at 733.  Following *Daimler* and *Asahi*, Plaintiffs cannot establish personal jurisdiction over the Foreign Banks or the BBA where they assert a plethora of state law causes of action which should have no extraterritorial application.

## II.   NONE OF THE FEDERAL STATUTES PROVIDES PERSONAL JURISDICTION IN THE CHALLENGED JURISDICTIONS.

### A.   Personal Jurisdiction Is Examined on a Claim-by-Claim Basis.

Some Direct Actions include claims under the federal antitrust, Racketeer Influenced or Corrupt Organizations Act ("RICO"), and Commodity Exchange Act ("CEA") statutes.  The federal antitrust and RICO claims are all subject to dismissal (*see* Prior Rulings Brief), and therefore cannot provide a basis for personal jurisdiction over any of the Defendants.  *See Reich v. Lopez*, 2014 WL 4067179, at *11 (S.D.N.Y. Aug. 18, 2014) (RICO statute's personal jurisdiction section inapplicable following dismissal).[26]   Regardless, however, none of these statutes, including the CEA, provides for personal jurisdiction over all of Plaintiffs' claims.

---

[26]   While courts typically first examine personal jurisdictional challenges, the court is permitted to consider the merit of the antitrust and RICO claims before deciding the personal jurisdiction question.  *ONY, Inc.* v. *Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim,

*(continued . . . )*

First, Plaintiffs cannot bootstrap personal jurisdiction for their *state law* claims based on any of these statutes' jurisdiction provisions.[27]  "A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted."  *Sunward Electronics, Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (citations omitted); *see First Capital Asset Management, Inc.* v. *Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002) (plaintiff must secure personal jurisdiction over a defendant with respect to each claim asserted); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7, at 226 (3d ed. 2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").  Pertinently, in *Reich*, the court examined and found personal jurisdiction lacking for state law claims under the New York long-arm statute, where the court dismissed plaintiff's federal RICO claim, which provides for nationwide service.  2014 WL 4067179, at *11-*16.[28]

Similarly here, most Direct Actions asserting antitrust, RICO, or CEA claims include a laundry list of state law claims — e.g., fraud, breach of contract, unjust enrichment, and tortious interference with contract.  Personal jurisdiction for these state law claims is assessed based upon

---

*(. . . continued)*

that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues.") (citation omitted).

[27]    Section 12 of the Clayton Act provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.  The RICO statute provides: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).  Section 22 of the CEA provides: "Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs." 7 U.S.C. § 25(c).

[28]    Plaintiffs cannot rely upon "pendent personal jurisdiction," a federal common law concept not mandated by statute.  *See In re Fannie Mae 2008 Securities Litigation*, 891 F. Supp. 2d 458, 481 (S.D.N.Y. 2012), ("'[P]endent personal jurisdiction is not explicitly authorized by statute and remains, at least in the view of most commentators, a federal common law doctrine.'") (quoting *United States* v. *Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002)), *aff'd*, 525 F. App'x 16 (2d Cir. 2013).  Even if such a jurisdictional concept were viable, pendent personal jurisdiction is inappropriate where the federal claim is dismissed.  *See id.* (not applying pendent personal jurisdiction where federal claims dismissed); *see also United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7, at 236 (3d ed. 2002).

each relevant jurisdiction's long-arm statute, not the Clayton Act's, the RICO statute's, or the CEA's nationwide service provision. Because the Defendants are not subject to personal jurisdiction in the Challenged Jurisdictions, the state law claims should be dismissed for lack of personal jurisdiction.

### B.  Federal Statutes Are Constrained by Due Process.

Although the federal statutes include nationwide service provisions, these statutes are still constrained by due process limitations under the Fifth Amendment. *See Porina* v. *Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (Due Process clause of Fifth Amendment applies to claims under federal law).[29] Because the exercise of jurisdiction over Defendants in the Challenged Jurisdictions does not comport with due process (as explained above), the Defendants are similarly not subject to personal jurisdiction for the antitrust, RICO, or CEA claims. While some Circuits applied a national contacts theory (and not a state-by-state approach) for federal claims pre-*Daimler*, such a theory does not comport with due process following *Daimler*, *Walden*, and *Porina*.

The Supreme Court has never held that the Fifth and Fourteenth Amendment apply different due process tests.[30] Constitutional notions of fairness and reasonableness should not be

---

[29]    The Second Circuit has held that venue must be proper in a district court for a plaintiff to rely upon the Clayton Act's service provision. *See Daniel* v. *American Board of Emergency Medicine*, 428 F.3d 408, 424-25 (2d Cir. 2005). Although the Second Circuit has not addressed it, the CEA's nationwide service provision, 7 U.S.C. § 25(c), contains language similar to the Clayton Act, 15 U.S.C. § 22, and therefore to rely upon that statutory provision, the Plaintiffs must demonstrate venue. *See also Premium Plus Partners, L.P.* v. *Davis*, 2005 WL 711591, at *7 (N.D. Ill. Mar. 28, 2005) (analyzing venue to determine personal jurisdiction for a CEA claim). Plaintiffs do not (and cannot) establish that many of the Foreign Banks and the BBA are "found" and "transacts business" in all of the Challenged Jurisdictions and thereby subject to these statute's nationwide service provisions. Unless otherwise noted, the following Foreign Banks contest venue in all Challenged Jurisdictions: BTMU (Kan. & Va. only), Credit Suisse Group AG, Deutsche Bank AG (except N.Y.), Lloyds Banking Group plc, HBOS plc., Lloyds Bank plc (except N.Y.), Norinchukin (except N.Y.), Portigon (except N.Y.), WestImmo (except N.Y.).

[30]    *See Omni Capital International, Ltd.* v. *Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987) (noting the court need not address national contacts theory); *Asahi*, 480 U.S. at 113 n.* (same); *see also* Peter Hay et al., *Conflict of Laws* § 10.2, at 480 (5th ed. 2010) ("The Supreme Court has thrice brushed by the question of Fifth Amendment limitations on personal jurisdiction without ever resolving it."). The Clayton Act's, CEA's, and RICO's service provisions are merely the statutory basis for jurisdiction (just as a state's long-arm statute is) and does not (and cannot) answer whether the exercise of jurisdiction comports with due process. *See Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.

*(continued . . . )*

discarded because jurisdiction is asserted under a federal statute rather than a state long-arm statute.  *See BCCI Holdings*, 119 F.3d at 945 ("We discern no reason why these constitutional notions of 'fairness' and 'reasonableness' should be discarded completely when jurisdiction is asserted under a federal statute rather than a state long-arm statute.") (citation omitted).

Indeed, *Daimler* and *Walden* both involved claims under federal statutes and the Supreme Court nonetheless focused upon the fairness and reasonableness of personal jurisdiction in the forum state.  In *Daimler*, the Supreme Court considered whether claims under the Alien Tort Statute and the Torture Victim Protection Act of 1991 could be maintained in federal court in California.  Though federal claims were at issue, the Supreme Court focused on due process considerations of "fair play and substantial justice" in maintaining the action in California. *Daimler*, 134 S. Ct. at 754 (citation and internal quotation marks omitted).  Similarly, *Walden* involved a federal common law claim brought in federal court.  134 S. Ct. at 1120.  Nonetheless, the Supreme Court was still concerned as a matter of due process with the defendant's liberty interests in defending suit in the forum state.  *See id.* at 1125, n.9 ("[W]e reiterate that the 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff.").

The Second Circuit has taken a similar approach to assessing personal jurisdiction under federal law.  In *Porina*, the Second Circuit, though conducting a national contacts analysis pre-*Daimler*, nonetheless held that "[a] defendant's contacts with the particular federal district in which the suit was filed, or lack thereof, may be relevant in determining, as the second stage of the [due process] analysis, whether it would be reasonable, in all the circumstances, to exercise personal jurisdiction." 521 F.3d at 127.[31]

---

(. . . continued)
1997) (federal statute's nationwide service provision "becomes the statutory basis for personal jurisdiction").

[31]   To support their "national contacts" argument, Plaintiffs rely on *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003).  *See* Dkt. # 618.  That case is inapposite.  In *Magnetic Audiotape*, the Second Circuit found personal jurisdiction based upon a Ninth Circuit case, *Go-Video, Inc.* v. *Akai Electric Co.*, 885 F.2d 1406 (9th Cir. 1989).  334 F.3d at 206.  The Second Circuit only applied *Go-Video*
(continued . . . )

Further, in *Daimler*, the Supreme Court recognized that the constitutional due process requirements protect a defendant's liberty interests because "exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" 134 S. Ct. at 761-62 (quoting *Burger King*, 471 U.S. at 472). A defendant's "individual liberty" and constitutional protections of due process in defending a suit where it is subject neither to specific or general jurisdiction in a particular state cannot be abrogated by a federal statute that permits national or worldwide service of process.

Applying *Daimler*, *Walden*, and *Porina*, even though Congress authorized nationwide service of process, as a matter of constitutional due process, federal courts must still examine the defendant's contacts with the forum state in considering whether "fair play and substantial justice" permit personal jurisdiction over those Defendants. *See Daimler*, 134 S. Ct. at 754. Because of the Defendants' insufficient contacts with the Challenged Jurisdictions, and based upon considerations of international comity espoused in *Daimler*, 134 S. Ct. at 762-63, and *Asahi*, 480 U.S. at 114, with respect to the Foreign Banks and the BBA, the exercise of jurisdiction over the Defendants would be unreasonable and inconsistent with due process. [32]

### C.   The Foreign Banks and the BBA Do Not Have Sufficient Contacts with the United States.

Finally, even if a nationwide contacts approach applied, Plaintiffs cannot demonstrate that the Foreign Banks or the BBA have sufficient contacts with the United States to permit

---

*(. . . continued)*

because neither party disputed its application. *Id.* at 206-07. Two years later, in *Daniel*, the Second Circuit rejected the analysis in *Go-Video*. 428 F.3d at 423-24. That part of its analysis is therefore no longer good law.

[32]   While Exchange-Based Plaintiffs (*FTC Capital GmbH, et al.* v. *Credit Suisse Group AG, et al.*, 11-cv-2613) have not yet filed their third amended complaint, all of these arguments apply with equal force to their CEA claims. At the time the parties briefed the prior motions to dismiss, these arguments were not available and therefore were not waived. *See Gucci*, 768 F.3d at 138 ("Prior to *Daimler*, courts in this Circuit often asserted general jurisdiction over nonparty foreign corporations based on the presence of corporate branches, subsidiaries, or affiliates in the Circuit."). Defendants have sought leave to move against the Exchange-Based Complaint on personal jurisdiction grounds (Dkt. # 601), and are prepared to do so once this Court grants such leave.

general or specific jurisdiction over them.  General jurisdiction is lacking under *Daimler* because the Foreign Banks and the BBA are not "at home" in the United States.  They are only "at home" where they have their principal place of business or where they are incorporated.  Moreover, beyond the contacts they attempted to identify to support jurisdiction in the Challenged Jurisdictions, Plaintiffs have identified no other contacts with the United States to support general jurisdiction.  Thus, for reasons explained above, because there is no specific jurisdiction over the Foreign Banks and the BBA in any of the Challenged Jurisdictions, there are also insufficient contacts with the United States to permit the exercise of personal jurisdiction.

## III.   JURISDICTIONAL DISCOVERY IS INAPPROPRIATE.

Recognizing that they have not—and cannot—plausibly allege facts supporting personal jurisdiction, Plaintiffs request jurisdictional discovery.  *See* Direct Action Plaintiffs August 20, 2014 Letter (Dkt. # 618) at 2-3.  Jurisdictional discovery is inappropriate where Plaintiffs rely upon conclusory allegations to support personal jurisdiction.  *Jazini*, 148 F.3d at 185.  It is plain that none of the Defendants is "at home" in any respective Challenged Jurisdiction to support general jurisdiction.  Regarding specific jurisdiction, Plaintiffs have considerable access to information provided by certain Defendants' regulatory settlements.  Even with the benefit of that information, they provide no plausible allegations supporting jurisdiction.  Jurisdictional discovery here would be an inappropriate "fishing expedition."  *NovelAire Technologies, L.L.C.* v. *Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013).

### CONCLUSION

The Direct Actions should be dismissed under Rule 12(b)(2) to the extent Defendants have challenged personal jurisdiction.

Dated: New York, New York
November 5, 2014

Respectfully Submitted,

*/s/ Robert F. Wise, Jr.*
Robert F. Wise, Jr.
Arthur J. Burke
Paul S. Mishkin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone: (212) 450-4000
Fax: (212) 450-4800
robert.wise@davispolk.com
arthur.burke@davispolk.com
paul.mishkin@davispolk.com

*Attorneys for Defendants Bank of America
Corporation, Bank of America, N.A., Banc of
America Securities LLC, Merrill Lynch & Co.,
Inc., Merrill Lynch, Pierce, Fenner & Smith,
Inc., Merrill Lynch Capital Services, Inc., and
Merrill Lynch International Bank Ltd.*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
libowd@sullcrom.com
viapianoc@sullcrom.com
Telephone:  (202) 956-7500
Fax:  (202) 956-7056

*Attorneys for Defendant The Bank of Tokyo-
Mitsubishi UFJ, Ltd.*

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants Barclays Bank plc,
Barclays plc, and Barclays Capital Inc.*

Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C.  20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays Bank plc*

/s/ Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'
Association, BBA Enterprises Ltd., and BBA
LIBOR Ltd.*

/s/ Andrew A. Ruffino

Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
aruffino@cov.com
Tel:  212.841.1000

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com
Tel:  202.662.6000

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
mlazerwitz@cgsh.com
Tel:  212.225.2000

*Attorneys for Defendants Citibank, N.A., and
Citigroup Inc., Citigroup Global Markets Inc.,
Citigroup Financial Products, Inc., Citigroup
Funding Inc., and Citi Swapco Inc.*

/s/ David R. Gelfand

David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY
LLP
One Chase Manhattan Plaza
New York, New York 10005
dgelfand@milbank.com
smurphy@milbank.com
Telephone:  (212) 530-5000

*Attorneys for Defendant Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.*

/s/ Herbert S. Washer

Herbert S. Washer
Elai Katz
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com

*Attorneys for Defendant Credit Suisse Group
AG, Credit Suisse International, Credit Suisse
AG, Credit Suisse Securities (USA) LLC,
Credit Suisse Securities (USA) Inc.*

/s/ Moses Silverman

Moses Silverman
Andrew C. Finch
Jessica Brach
Noam Lerer
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3355
Fax: (212) 492-0355
msilverman@paulweiss.com
afinch@paulweiss.com
jbrach@paulweiss.com
nlerer@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG
and Deutsche Bank Securities Inc.*

/s/ Ed DeYoung
Ed DeYoung
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone:  (212) 812-8325
Fax:  (212) 812-8385
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8614
Fax:  (214) 740-8800
rcowie@lockelord.com

*Attorneys for Defendants HSBC Holdings plc, HSBC Bank plc, The Hongkong and Shanghai Banking Corporation Ltd., and HSBC Bank USA, N.A.* (except in *City of Houston v. Bank of America Corp., et al.*, S.D.N.Y. Case No. 1:13-cv-05616)

/s/ Donald R. Littlefield
Donald R. Littlefield (*pro hac vice* motion pending)
Jack D. Ballard (*pro hac vice* motion pending)
Michael A. Rodriguez (*pro hac vice* motion pending)
BALLARD & LITTLEFIELD, LLP
3700 Buffalo Speedway, Suite 250
Houston, Texas 77098
Telephone: (713)403-6400
Fax: (713)-403-6410
dlittlefield@ballardlittlefield.com
jballard@ballardlittlefield.com
mrodriguez@ballardlittlefield.com

*Attorneys for Defendants HSBC Holdings plc and HSBC Bank plc* in *City of Houston v. Bank of America Corp., et al.*, S.D.N.Y. Case No. 1:13-cv-05616

/s/ Thomas C. Rice
Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000
Fax:  (212) 455-2502
trice@stblaw.com
jarteaga@stblaw.com
jflaherty@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank U.S.A., N.A., J.P. Morgan Markets Limited (f/k/a Bear, Stearns International Limited), and J.P. Morgan Dublin plc (f/k/a JPMorgan Bank Dublin plc) (f/k/a Bear Stearns Bank plc)*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
Telephone:  (212) 918-3000
Fax:  (212) 918-3100

*Attorneys for Defendants HBOS plc, Lloyds Bank plc (formerly known as Lloyds TSB Bank plc) and Lloyds Banking Group plc*

/s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com
Telephone:  (212) 839-5300
Fax:  (212) 839-5599

*Attorneys for Defendant The Norinchukin Bank*

/s/ Arthur W. Hahn
Arthur W. Hahn
Christian T. Kemnitz
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
Telephone:  (312) 902-5200

*Attorneys for Defendant Royal Bank of Canada*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York  10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com


/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com

*Attorneys for Defendants The Royal Bank of*
*Scotland Group plc, and The Royal Bank of*
*Scotland plc.*[33]

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Fax:  (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

---

[33]    Wilmer Cutler Pickering Hale and Dorr LLP is counsel for these defendants except as to plaintiffs Prudential Investment Portfolios 2; Triaxx Prime CDO 2006-2 LTD; Triaxx Prime CDO 2007-1 LTD; Principal Funds, Inc.; Principal Capital Interest Only I, LLC;Principal Commercial Funding, LLC; Principal Commercial Funding II, LLC; Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Real Estate Investors, LLC; Principal Variable Contracts Funds, Inc.; and Fannie Mae.  Clifford Chance US LLP is counsel for these defendants except as to Plaintiff the Federal Home Loan Mortgage Corporation.

/s/ Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG (f/k/a WestLB AG) and Westdeutsche ImmobilienBank AG*

/s/ Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street
San Francisco, CA 94105-0921
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS Securities LLC, and UBS Limited*